IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

JOHN DOE,

    Plaintiff

    v.

UNIVERSITY OF MASSACHUSETTS,
TRUSTEES OF THE UNIVERSITY OF
MASSACHUSETTS, HANNAH MONBLEAU, in
her official and individual capacities, KATE
LEGEE, in her official and individual capacities,
ESMERALDA LEVESQUE, a/k/a ESMERALDA
Mendez, in her official and individual capacities,
ADAM DUNBAR in his official and individual
capacities, BRETT SOKOLOW,

    Defendants

**No. 1:23-cv-12077-WGY**

**DECLARATION OF ILYA FEOKTISTOV IN SUPPORT OF PLAINTIFF JOHN DOE'S
MOTION TO PROCEED UNDER PSEUDONYM AND TO FILE HIS TRUE NAME
<u>UNDER SEAL</u>**

I, Ilya Feoktistov, declare the following pursuant to 28 U.S.C. § 1746:

I am an attorney licensed to practice in the Commonwealth of Massachusetts and am in solo

practice. I am admitted to this Court and am counsel of record for Plaintiff John Doe in the

above-referenced matter. I have personal knowledge of the matters set forth herein and if called

to testify, could and would testify competently thereto. My testimony is not essential to proving

the matters set forth herein.

1. Annexed hereto as Exhibit A is a true and accurate copy of a September 7, 2023 letter

    sent to Plaintiff John Doe by Defendant University of Massachusetts informing him that

    he has been found responsible for sexual misconduct and describing the rationale for this

Declaration in Support of Plaintiff's Motion to Proceed Under Pseudonym

finding, and imposing various disciplinary sanctions on Plaintiff. Personally identifying

information of Plaintiff, the complainants against Plaintiff, and the witnesses in

Plaintiff's disciplinary proceeding has been redacted, with names replaced by initials

only.

2. Annexed hereto as Exhibit B is a true and accurate copy of Defendant University of

Massachusetts's "Student Conduct Code" for its campus in Lowell, Massachusetts.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct. Executed this 6th day of November, 2023, in Brookline,

Massachusetts.

**SERVICE CERTIFICATE**

I, Ilya Feoktistov, counsel for Plaintiff John Doe in the above-captioned matter, hereby certify that on November 8, 2023, I served a true and accurate copy of the foregoing document on the parties of record by filing electronically and by email on counsel for the University of Massachusetts, the Trustees of the University of Massachusetts, Hannah Monbleau, Kate Legee, Esmeralda Levesque, and Adam Dunbar at:

Michael Hoven, MHoven@umassp.edu

Maria Sheehy, MSheehy@umassp.edu

_____
Ilya I. Feoktistov, Esq.

# Exhibit A



**DIVISION OF STUDENT &
ACADEMIC AFFAIRS**

**Office of Student Rights & Responsibilities**
220 Pawtucket Street
University Crossing – Suite 200
Lowell, MA 01854-5142
Phone:  (978) 934-2100

September 7, 2023

John Doe
Sent electronically to     John_Doe@student.uml.edu

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2022156002

September 7, 2023

Dear  John :

This letter is to inform you of the decision of the Hearing Panel which was held on August 22, 2023 for the incident that took place on or around May 7, 2023.

The below findings and sanctions, if applicable, were determined for each alleged Student Conduct Code charge, based on the "preponderance of the evidence" and all of the information provided.

A.02.f. Sexual Misconduct -- Responsible

Due to the above stated findings the following sanctions have been put into effect:

- ○ Due to the nature of this incident and the charges and findings against you, you have been permanently banned from University Housing. For the remainder of your time at the University, you are trespassed from all University Housing buildings and may only access public spaces in the residence halls. This ban is effective September 10, 2023.

  If you were previously living in a residential space, you must check out of your room no later than 5pm on September 10, 2023. Please make an appointment with your Area Coordinator, Resident Director, or Residence Life staff member to check out of your room and return your keys. You can contact them via email or by calling the staff office. This information can be found at http://www.uml.edu/student-services/reslife/staff/Resident-Directors.aspx. Your meal plan will automatically be cancelled, along with your housing assignment. If you wish to keep your meal plan, please contact the Office of Residence Life within one (1) business day from receipt of this letter.

Per the housing contract: Students removed from housing or prohibited from living on campus as a result of a Student Conduct Code sanction will be assessed the cancellation fee, will not receive a housing refund, and will be held accountable to the terms of this housing agreement. Meal Plan charges may be prorated for portions used.

In addition, you are prohibited from entering any UMass Lowell Residence Halls, with the exception of the University Dining Commons in Fox Hall and the Dining Hall at the Inn and Conference Center. The UMass Lowell Police have been notified of this status, and any attempt to enter the residence halls will result in future action through the University Conduct Process.

- As a result of your incident, you have been placed on Elevated Probation from September 7, 2023 to through graduation. During this time a student's status with the University can be at jeopardy in the case of further violations of the Student Conduct Code. Further violations of the Student Conduct Code may result in housing removal, suspension, or expulsion from the University. Probationary status does not appear on your transcript but remains a part of your disciplinary record for seven years after completion of all sanctions, and is reported to inquiring parties when background checks are conducted.
- Student must engage in research of and completion of an approved consent training required prior to registering for future classes. Once proof of an appropriate consent training is provided and approved, the respondent can resume registering for courses on campus. The course may be taken online or in person, but must be approved by the Office of Student Rights & Responsibilities as appropriate.
- The continuation of and/or issuance of no contact orders between all complainants as well as witness ████████ GD and █████ John Doe █████ .

**Rationale for Findings and Sanctions are found in the attached deliberation document.**

Should you choose to appeal the decision, you must submit your appeal by September 21, 2023 by 4pm. Your appeal must be submitted electronically at https://cm.maxient.com/reportingform.php?UMassLowell&layout_id=5. The appeal must be in writing based on one of the three criteria identified in the Appeals Section of the Student Conduct Code (revised August 2020). Information can be found by following the link provided: https://www.uml.edu/student-services/Student-Conduct/conduct-code/.

If you have any questions do not hesitate to contact me.

Sincerely,

Kate Legee, M.S., M.A.
Director of Student Conduct

CC: Ann Ciaraldi, Associate Dean of Student Affairs

**Panel Deliberation Form**

Hearing Panel Date: August 22, 2023

Student Name: John Doe

Hearing Panel Members: Kate Legee (Chair), Esmarelda Levesque, Adam Dunbar

## Alleged Violations:

Violation: Sexual Misconduct

> Sexual Misconduct: unwelcomed conduct of a sexual nature when: submission to or rejection of such conduct by a person or persons is used as a basis for employment or educational decisions affecting such person or persons, or participation in University programs or activities; or such conduct unreasonably: interferes with a person or person's work or academic performance; interferes with or limits a person or person's ability to participate in or benefit from a work or academic program or activity; or creates an intimidating, hostile, or offensive working or academic environment.

Response: Respondent did not attend the hearing panel. The hearing panel considered Respondent's statements to the investigator as well as his July 30, 2023 written response to the investigation report in reaching its findings.

## Hearing Panel Findings:

Charge: Sexual Misconduct

Material findings of fact:

During the investigation interviews, as well as in the hearing on August 22, 2023, the complainants and witness described respondent John Doe engaging in multiple sexual comments and touches without consent or prior warning. All complainants stated that the comments made by Doe were not welcome. Doe's July 30, 2023 response to the investigation report indicates that he agrees that many of the comments did occur with the complainants and witness, all of whom he met as a student in the residence halls. The following comments and actions are confirmed as fact by all parties involved in each incident: Doe hugged female students, Doe stated to SK "I don't need to someone to have sex with," and Doe 's 'comparison of unwanted sexual conduct with unwanted religious proselytism was provocative but apt...' Further, multiple witnesses indicated that Doe moved JT 's feet without consent. There were discrepant reports about the specific comment about sex while eating food and about the reference to shaving pubes and testicles.

Witness GD stated that Doe stated "what if I stuck my penis in your face?" This statement, according to GD in the hearing panel on August 22, 2023, caused her to feel fear and confusion about Doe s intent in the moment. Doe states that he did compare unwanted sexual conduct to religious proselytism in this conversation and meant to do so in

disagreement with both. In the hearing panel on August 22, 2023, ███ GD ███ stated that this comment was not welcome.

███ CTZ ███ stated in the hearing panel on August 22, 2023, that when she did see ███ KG ███ and ███ Doe ███, she waved at them. In his interview with the investigator, ███ KG ███ stated that " ███ CTZ ███ came out and waved her hand and a wine bottle. It was informal because they were on duty and he doesn't have the relationship for them to do that. He just waved back and told ███ Doe ███ they're probably just enjoying themselves." In his interview with the investigator, ███ Doe ███ stated that when he and ███ KG ███ saw ███ CTZ ███, she waved the wine bottle at them. In his response to the investigation report, ███ Doe ███ stated that ███ CTZ ███ told ███ KG ███ that "I know you'll snitch on me." Witness ███ CTZ ███ stated in the hearing panel on August 22, 2023 that she and other students were, in fact, drinking on the night of May 6, 2023. She stated that she did not make any statements to ███ KG ███, nor ███ Doe ███ related to not "snitching" on them.

In the hearing panel on August 22, 2023, as well as in her interview with the investigator, ███ CTZ ███ stated that ███ Doe ███ told her "If the food is good, I'd have sex while eating." She did not welcome this comment. In his interview with the investigator, ███ Doe ███ stated that he does not remember saying the word sex while talking about food, but that he may have done so. In his response to the investigation report, ███ Doe ███ stated that ███ CTZ ███ may have misunderstood what he was saying in regard to food, and that he may have been speaking similar to the popular hashtag #foodporn.

███ JT ███ stated in her interview with the investigator as well as in the hearing panel on August 22, 2023, that ███ Doe ███ touched her legs with his hands, and possibly with his feet, without her consent to place her feet on the shaker plate. In his response to the investigator's report, ███ Doe ███ stated that he used his feet to move her feet. This was confirmed by Witness ███ DI ███ in the investigator's report. In the hearing panel on August 22, 2023, Tardanico stated that she did not welcome the touching of her feet by ███ Doe ███.

In the hearing panel on August 22, 2023, ███ JT ███ stated that ███ Doe ███ touched her thigh without consent when he attempted to show her a video on his phone. ███ Doe ███ denied ever touching any other students, in either an inappropriate or appropriate manner.

███ JT ███ ███ Doe ███ stated in the investigator's interview and the hearing panel on August 22, 2023 that ███ Doe ███ made a comment to her about shaving his pubes and to several students shaving his testicles while there was a group of students together in his room to look at his workout equipment. This was confirmed by witness ███ RR ███ in the investigator's report. In the hearing panel on August 22, 2023, the investigator stated that she learned that ███ RR ███ was there during the comment from Witness ███ DI ███ ███ Doe ███, and not from any other party involved; this is why she asked him to provide his account. ███ Doe ███ denies making these statements, as does Witness ███ DI ███.

███ JT ███ stated, in both her interview with the investigator as well as the hearing panel on August 22, 2023, that she would be hugged by ███ Doe ███ without him asking to hug her, but rather by him approaching her closely with outstretched arms to embrace her. She stated that she did not feel comfortable with these hugs. In his interview with the investigator, he stated that he and ███ JT ███ were

close friends, and that she had made him a valentine. In his response to the investigation report, ██Doe██ stated that his request for hugs were not unwelcome.

In her interview with the investigator, as well as the hearing on August 22, 2023, ██SK██ indicated that ██Doe██ told her "I don't need someone to have sex with, I just want someone to cuddle with," and "I'll be alone, so I'll just jerk off and go to bed." In the interview with the investigator, ██Doe██ stated he did not make any comments of this nature. In his response to the investigator's report, ██Doe██ stated that he said "I don't need to someone to have sex with." In the hearing panel on August 22, 2023, ██SK██ stated that she did not welcome the comment.


**Finding:** Responsible

**Rationale:** In the hearing on August 22, 2023, ██JT██, ██CTZ██ ██SK██, and ██GD██ all stated that the conduct by ██Doe██ was not welcome.

As noted above, related to the comment "what if I stuck my penis in your face" in conversation with ██GD██, ██Doe██ states that he did compare unwanted sexual conduct to religious proselytism in this conversation and meant to do so in disagreement with both. With this context of intent assumed as fact, the statement remains unwelcome by the recipient.

Related to the comment in conversation with ██CTZ██, ██Doe██ stated that he does not remember saying the word sex while talking about food, but that he may have done so. In his response to the investigation report, ██Doe██ stated that ██CTZ██ may have misunderstood what he was saying in regard to food, and that he may have been speaking similar to the popular hashtag #foodporn. With this context of intent assumed as fact, the statement remains unwelcome by the recipient.

Related to moving ██JT██ s feet without her consent, ██Doe██ stated that he did so to move her feet on the shaker plate, and did so with his own feet. This touching was unwelcome and no party noted any conversation asking for consent.

██JT██ stated that ██Doe██ would hug her without asking until his arms were outstretched and she felt obligated to engage. ██Doe██ stated that his hugs with ██JT██ were not unwelcome. With this context of intent assumed as fact, the hugs were not welcome by the recipient.

██SK██ stated that the comments that ██Doe██ made about sex were not welcome. ██Doe██ stated that he said to ██Doe██ "I don't need someone to have sex with." This comment was not welcome by the recipient.

The comments to ██SK██, ██CTZ██ and ██GD██, as well as hugs and touching of ██JT██'s feet constitute a pervasive pattern of unwelcome conduct related to sex directed to female students. These comments affected ██SK██, who left the room after the comment occurred to avoid ██Doe██ s conduct, and asked to not be on duty with ██Doe██ afterward. ██JT██ and ██CTZ██

██████ also indicated that they were not comfortable interacting with ███ Doe ███ any longer, and that the interactions impacted their ability to work their student employment positions at UMass Lowell.

Given the aforementioned information provided through the investigation, response to the report, and hearing , the panel finds that ███ Doe ███'s comments and touching actions were more likely than not unwelcome, were of a sexual nature, and created a working environment in an academic setting that was offensive for multiple female students. A reasonable person would find comments of a sexual nature in the academic living and working environment to be offensive. On the preponderance of evidence standard, this constitutes a violation of the sexual misconduct standard in the Student Conduct Code.

## Sanctions: Permanent housing removal, elevated probation through graduation, research of and completion of approved consent training required prior to registering for future classes, no contact orders between all complainants as well as witness ███ GD ███ and ███ Doe ███ ██████

Rationale: Sexual misconduct impacts members of the campus community tremendously. The respondent's behavior in this case impacted multiple members of the student community. Past cases of findings of responsibility for sexual misconduct have led to sanctions ranging from elevated probation to housing removal, suspension, and expulsion.

The complainants all indicated being made uncomfortable to a degree that shows a pattern of sexually inappropriate comments with females who live in university housing. All incidents occurred between female residents and the respondent while in university housing. By separating the respondent from university housing, further comments of this nature can be prevented from impacting other students in the residential community. The lowest sanction given in cases such as these would not remediate the effects of the actions.

The panel believes completion of a self-researched and approved consent training that can show that the respondent has learned appropriate ways to interact with others in conversations related to sex to prevent further harm and enable him to partake in the academic community in appropriate ways. Once proof of an appropriate consent training is provided and approved, the respondent can resume registering for courses on campus. The course may be taken online or in person, but must be approved by the Office of Student Rights & Responsibilities as appropriate.

# Exhibit B

# Student Conduct Code

## Report a Student Concern

Use this form to report any concerns about a student's behavior.

File A Report

The Student Conduct Code provides the behavioral expectations for all University of Massachusetts Lowell students. The Student Conduct Code (alternately, Code or Conduct Code) has jurisdiction to address behavior that occurs both on University property and off campus. Additionally, the Conduct Code provides the procedures used to address alleged violations of the Conduct Code.
*(Reviewed and Updated August 2022)*

In order to read the Student Conduct Code, please click on the bulleted list to jump to a specific section.

- Preamble
- Definitions
- Student Conduct Details
- University Jurisdiction
- University Standards
- Sanctions
- Adjudication Procedures
- Appeals
- Records & Confidentiality
- Appendix A: Hazing Policy
- Appendix B: Alcohol Policy
- Appendix C: Campus Drug Policy
- Appendix D: Demonstrations on University Property
- Appendix E. Good Samaritan Policy
- Appendix F: Sexual Harassment Grievance Procedure

### Questions

Questions regarding the Conduct Code should be directed to:

The Office of Student Conduct
Location: University Crossing, Suite 200
Phone: 1-978-934-2100
Email: studentconduct@uml.edu

## Preamble

Acting upon the authority granted to it by the provisions of Chapter 75 of the General Laws, the Board of Trustees adopts the policies and procedures herein contained which govern the conduct of students. The provisions which follow are subject to the requirements and guidelines established by the Board of Trustees.
Conduct appropriate to a student at the University of Massachusetts Lowell (the "University") is that conduct which promotes the individual's own academic pursuits and which contributes to meeting the community's educational goals and objectives.
An individual's conduct or behavior becomes a proper concern of the University if it adversely affects the academic interest of the student or other members of the University or the University's pursuit of its educational objectives. In addition, because the University is in an urban setting, it is an inseparable part of the community and the surrounding neighborhoods. The University is strongly committed to the promotion of goodwill in the larger community which is essential to the continued cooperation of the University and its neighbors in civic projects and to the furtherance of the University's broader mission to contribute to the general good of society. Consequently, the University must consider student behavior, whether on or off campus, that is disruptive of good community relations or which interferes with, impairs, or obstructs the University's mission, functions, and processes or that are found to be offensive to generally accepted standards of sound behavior, as harmful and adverse to the University's interests. Notification of a Code violation or decision of a Code violation is issued to a student through the student's University email account.
Any behavior which may have been influenced by a student's mental state (irrespective of the ultimate evaluation), or use of drugs or alcoholic beverages, shall not in any way limit the responsibility of the student for the consequences of their actions. Therefore, such conduct may be subject to the University's Student Conduct Code and Discipline Process.
It is not the purpose of the Student Conduct Code to duplicate the public statutes. The University cannot and does not condone violations of law and clearly recognizes that the laws of the land operate in full force on its campus. However, the University reserves its own special authority for the regulation of conduct which affects its interests as an academic community.
The University may institute proceedings against students whose conduct is prohibited by state, federal, or local laws, and which occurs on or off campus and materially affects the campus community. Such action by the University is independent of, and may proceed in parallel with, civil and/or criminal action. Additionally, the University may institute proceedings against students whose conduct is a violation of University policies and regulations (including Residence Life Guidelines).

Fundamental to the achievement of community among the members of the University is the recognition by all such members that each shares a responsibility to observe the University's Student Conduct Code, policies, and regulations. This obligation, which is an extension of the citizen's responsibility to observe the law of the land, is an essential corollary to participation in the academic rights afforded to members of the University.

The University Student Conduct Code is not the only document governing conduct on this campus. This student conduct process is separate, and may operate following a referral, from other processes including, but not limited to, the grievance process for potential violations under the University's Sexual Harassment Grievance Procedure (see Appendix F). Everyone, including students, faculty, staff, and administrators, is urged to become familiar with additional rules and regulations including, but not limited to: Massachusetts Motor Vehicle Regulations, University Parking Regulations, the Residence Life Community Living Guidelines, rules regarding Academic Integrity, the University's Title IX Sexual Harassment Policy and grievance process, the Policy for Demonstrations on University Property, the State Hazing Policy, and the University Policies for Electronic Resources.

This Code sets forth examples of behavior for which discipline and educational sanctions may be imposed and is neither intended to be exhaustive nor to limit the University's ability to discipline student conduct

# Definitions

1. **University**: The University of Massachusetts Lowell.
2. **Student**: all persons taking courses at the University, either full-time or part-time; pursuing undergraduate, graduate, or professional studies; persons who withdraw after allegedly violating the Student Conduct Code; persons who are not officially enrolled for a particular term but who have a continuing relationship with the University; persons who have been notified of their acceptance for admission; or persons who are living in University residence halls or apartments, although not enrolled in this institution.
3. **Faculty Member**: any person hired by the University to conduct classroom or teaching activities or who is otherwise considered by the University to be a member of its faculty.
4. **Staff**: any person employed by the University, performing assigned administrative or professional responsibilities.
5. **Member of the University Community**: any person who is a student, faculty member, staff or any other person employed by the University. A person's status in a particular situation shall be determined by the Dean of Student Affairs or their designee.
6. **University Premises/Property**: all land, buildings, facilities, and other property in the possession of or owned, leased, used, operated or controlled by the University.
7. **Organization**: any number of persons who have complied with the formal requirements for University registration, or who operate as such even without complying with the formal registration requirements.
8. **"Preponderance of the Evidence" Standard**: The burden of proof standard used in determining a violation of the Student Conduct Code. A preponderance of the evidence standard means that it is more likely than not that a violation of the Student Conduct Code occurred.
9. **Conduct Hearing Panel**: any person or persons authorized by the Associate Dean of Student Affairs or their designee to determine whether a student has violated the Student Conduct Code and to determine sanctions that may be imposed. This panel serves as the university decision maker. The individuals of the panel shall be trained annually. More information about trainings related to adherence to regulations under Title IX can be found on the University's Prevent website.
10. **Conduct Officer**: a staff member, trained annually on the university's conduct process, authorized on a case-by-case basis by designation of the Associate Dean of Student Affairs or their designee to hear cases and impose sanctions upon student(s) found to have violated the Student Conduct Code.
11. **Intercourse**: The penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person.
12. **Sexual Touching**: any sexual contact with the breasts, buttocks, groin, genitals, mouth or other bodily orifice of another, or touching another with any of these body parts, or making another touch you or themselves with or on any of these body parts; any bodily contact in a sexual manner, though not involving contact with/of/by breasts, buttocks, groin, genitals, mouth or other orifice.
13. **Consent**:
    - General Definition: Consent is knowingly given, informed; freely, willingly, and actively given; mutually understandable, unambiguous words or actions; which indicate a willingness to engage in mutually agreed upon sexual activity (or in more plain language to agree to do the same thing, at the same time, in the same way, with each other). One may not engage in sexual activity with another who one knows or should reasonably know to be physically or mentally incapacitated, including incapacitation by drug or alcohol use or under threat of violence.
      Consent may be withdrawn at any time.
      - It is the responsibility of the person seeking to initiate the sexual activity or conduct to affirmatively obtain consent, not the intended recipient of such contact or conduct to deny such consent. An affirmative, informed decision to engage in mutually acceptable sexual activity given by clear and unambiguous actions or words, it is an informed decision made freely and actively by all parties. Relying solely upon nonverbal communication can lead to miscommunication. It is important not to make assumptions; if confusion or ambiguity on the issue of consent arises anytime during the sexual interaction, it is essential that each participant stop and clarify, verbally, the willingness to continue.
      - Students should understand that consent may not be inferred from silence, passivity, or lack of active resistance alone.
      - A current or previous dating or sexual relationship is not sufficient to constitute consent, and consent to one form of sexual activity does not imply consent to other forms of sexual activity.
      - When substance use is involved, a person is not considered able to give consent when the victim's judgment is incapacitated such that that they would not be capable of making rational decisions about their welfare, based on understanding "who, what, where, when and how" analysis, and as such the person would not be able to give consent to engage in sexual activity.
      - When an individual is incapable of giving consent because of their temporary or permanent mental or physical incapacity.
      - An individual cannot consent if they are under the threat of violence, bodily injury, or other forms of coercion.
      - Consent is not indefinite and may be withdrawn at any time. Once consent is withdrawn, all sexual activity must cease unless and until additional effective consent is given.

**Information about reporting sexual misconduct, the process related to sexual misconduct, and resources available under the university's Title IX Sexual Harassment Grievance Procedure can be found on the** Sexual Harassment Prevention & Education website.

# University of Massachusetts Lowell Student Conduct

It is in the best interest of the University and members of the University community for the University to function in regard to disciplinary matters as a self-contained community in an orderly environment. Assurance that fair sanctions will be promptly imposed on those found responsible for misconduct will help the University preserve order. The University Student Conduct Process is designed to help the University exercise proper control over its own disciplinary affairs while acknowledging the rights and competence of the civil authorities in such matters. Procedures have been established which are reasonably calculated to facilitate a reliable determination of the issues and to afford any student(s) accused or a student who files a complaint of certain basic procedural rights, as specified below.

It is the intent of this Student Conduct Code to set forth in a clear, concise manner the expectations and duties of all members of the University community and to set forth administrative and disciplinary procedures whereby those students who are accused of violating the rules may be afforded a hearing and, if appropriate, a fair and just sanction.

## Interim Measures:

1. The University shall retain the right to impose interim measures impacting a student's status if such action is necessary because of a threat of imminent harm to the physical health or safety of a member of the University community or University property. This interim measures process is reserved for threats to the physical health or safety of a member(s) of the University community or University property not otherwise covered under the university's Sexual Harassment Grievance Procedure. The determination to impose an interim measure shall be made by the Vice Chancellor of Student Affairs and/or their designee. These interim measures may be delivered verbally and/or in writing. Any interim measures provided verbally will be followed up in writing no later than 72 hours. Students who are subject to interim measures will be afforded an opportunity to request an interim action review meeting with a university administrator within two business days to provide relevant information for consideration related to the interim decision and/or request a modification to the interim action. Whenever possible, a hearing will be scheduled for the student impacted by interim measures for the next business day. The university administrator will determine if modifications are necessary. Interim measures are reviewed if new information becomes available and will be adjusted accordingly.
2. The University shall retain the right to impose an interim suspension if such action is necessary because of a threat of imminent harm to the physical health or safety of a member of the University community or property. The determination to impose an interim suspension shall be made by the Vice Chancellor of Student Affairs and/or their designee. Interim Suspension is defined as: A temporary separation from the University until the conduct process can be completed. During this period of time a student is not permitted on any University property (owned/leased/operated by) without permission from the Dean of Students Office or their designee. Additionally, the only business a student under interim suspension is allowed to conduct with the University is to participate in the conduct process (see Section VI: Procedures for adjudicating an alleged violation of the student conduct code).
3. Other interim measures may be used to protect the well-being of the University community or property. These interim measures are used during a pending conduct process and maybe extended after the conclusion of the conduct process. Examples of interim measures include but are not limited to:
No Contact Order: A student is restricted from contacting another student(s).

   Interim Housing Removal: A student is barred from University Housing (owned/operated/leased) pending the outcome of student conduct process. This housing removal may be made permanent by the sanction or lifted after the process has been completed.

   Interim Housing Relocation: A student's housing assignment is changed.

   Campus Restriction: A student is restricted from specific locations on campus.

   Academic arrangements: Modifications may be made to a student's academic schedule, classroom assignment, in class logistics, etc. in order to limit contact with another student and/or university community member.

   Interim measures may also be taken by offices overseeing students' participation or membership in organizations or employment, which are subject to oversight outside the conduct process.

# University Jurisdiction

Students are subject to all local, state and federal laws. Conduct, whether on or off-campus which adversely affects the University's mission and purpose and/or potentially violates the Student Conduct Code will be subject to an action through the University Student Conduct Process and, if warranted, careful consideration will be given to University disciplinary action in addition to whatever action civil authorities might pursue. The University may institute disciplinary proceedings against students whose conduct is prohibited by state, federal, or local laws and which occurs on or off campus, when such conduct is also a violation of the Student Conduct Code, or University policies and regulations.

# University Standards

Misconduct for which students are subject to disciplinary action, up to and including suspension or expulsion from the University will generally fall into the following categories. These standards are separate from those prohibited under the University's Sexual Harassment Grievance Procedure under Title IX, which will be processed via the procedure outlined in that document (see Appendix F). Any formal reports of Sexual Harassment must be reported to the University's Title IX Coordinator. Information can be found through the University's Equal Opportunity & Outreach Office.

Reports made to the Title IX Coordinator may be dismissed under the Sexual Harassment Grievance Procedure, and referred for investigation of potential violations of the student conduct code, including those below, which will be processed through the student conduct process.

## A. Respect and protection for persons and property

Respect for persons means acting to enhance the safety, well-being and freedom to allow all persons to pursue their legitimate aims. This is inclusive of all University Community Members and non-community members. Respect for property means recognizing not only the ownership rights of persons and of the University, but also the dependence of all on the availability and preservation of necessary facilities and equipment.

1. **Interpersonal Misconduct**: No student shall assault, threaten, harass, stalk, haze or otherwise physically or psychologically abuse any other person or themselves, on or off campus, including a University or city official acting in the line of duty. This shall include but not be limited to:
   - **Physical assault**: Actions including, but not limited, to physical attack upon or physical interference with a person which prevents the person from conducting their customary or usual affairs, puts the person in fear for their physical safety, or causes the person to suffer actual physical injury. The University has special concern for incidents in which persons are subject to physical assault because of membership or perceived membership in a racial, ethnic, religious, gender, or sexual orientation group.
   - **Intimidation, threat, or harassment**: Conduct less than a physical attack or physical action which interferes with a person in the conduct of their customary or usual affairs, or conduct which is sufficiently severe or pervasive to unreasonably interfere with an individual's work or academic performance, or creates an intimidating, hostile, or offensive working or academic environment. A single, unusually severe incident may constitute intimidation, threats, or bullying. Any pattern of unwelcome conduct directed specifically at another person that threatens or endangers the physical or mental safety or property of that person (or a member of that person's family or household) or creates a reasonable fear or intimidation of such a threat or action. Examples include, but are not limited to, actions such as the posting of threatening letters directed to the person, the use of threatening language directed at another, harassing or threatening telephone calls, email, voicemail, posting of materials in on-line communities, instant messaging (IM), or the vandalism of a person's room (e.g. by graffiti). The University has special concern for incidents in which persons are subject to such conduct because of membership or perceived membership in a racial, ethnic, religious, gender, or sexual orientation group.
   - **Retaliatory Harassment**: Any adverse action taken against a member of the community for filing a complaint of a possible Student Conduct Code or university policy violation, participating in the review of a complaint, or participating in disciplinary proceedings in any capacity. Retaliation includes taking action which may have an adverse impact on a student's academic success or the learning environment of a student if such action is taken because of the student's filing of, or participation in the review of a complaint, whether or not the complaint is determined to be valid. Retaliation by a student, directly or indirectly, may result in additional conduct code charges. Any student who believes that retaliation has taken place or is taking place, should immediately report the matter as provided herein.
   - **Intrusion of Privacy:** Intrusion of Privacy is photographing, videotaping, filming, digitally recording, or by any other means secretly viewing, with or without a device, another person without that person's consent in any location where the person has a reasonable expectation of privacy, or in a manner that violates a reasonable expectation of privacy. Unauthorized storing, sharing, and/or distribution is also prohibited. This does not apply to lawful security or surveillance filming or recording that is authorized by law enforcement or authorized university officials. These provisions may not be utilized to impinge upon the lawful exercise of constitutionally protected rights of freedom of speech or assembly.
   - **Abuse of a Service Animal:** Intentionally causing physical or psychological harm to a Service Animal or Emotional Support Animal. The neglect of a Service Animal or Emotional Support Animal is also a violation of the Conduct Code.

## 2. Standards related to Non-Title IX Sexual Misconduct

Cases of potential sexual misconduct must first be reported to the University's Title IX Coordinator for evaluation under the University's Sexual Harassment Grievance Procedure under Title IX. Cases which do not meet the Title IX jurisdiction, may be referred to other campus processes. Cases of this nature which involve student respondents will be referred to the Student Conduct Investigation and Hearing Panel process. In cases where the Title IX definition is not met, the following definitions will apply as violations of the Student Conduct Code related to sexual misconduct.

No student shall sexually abuse or assault any other person on or off campus, including a University or city official acting in the line of duty. These standards are separate from those encompassed by and prohibited under the University's Sexual Harassment Grievance Procedure under Title IX, which will be processed via the procedure outlined in that document (see Appendix F). Any formal reports of Sexual Harassment must be reported to the University's Title IX Coordinator. Information can be found through the University's Equal Opportunity & Outreach Office. Reports made to the Title IX Coordinator may be dismissed under the Sexual Harassment Grievance Procedure, and referred for investigation of potential violations of the student conduct code, including those below, which will be processed through the student conduct process. This shall include but not be limited to:

**Domestic/Dating Violence**: Dating Violence is abusive behavior (including, but not limited to, physical, emotional, and/or sexual acts or conduct) committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim. The existence of such a relationship will be determined by factors such as the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved. Domestic Violence is any abusive behavior (including, but not limited to, physical, emotional, and/or sexual acts or conduct) committed:

1. against a person who is a current or former spouse;
2. against a person with whom the abuser shares a child in common;
3. against a person who is or has cohabitated with the abuser as a spouse;
4. against a person similarly situated to a spouse;

5. between a parent and child;
6. between members of the same household in an intimate relationship; or
7. against any other person similarly situated.

**Non-Consensual Sexual Intercourse**: The penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the Reporting Person. The definition includes any gender of Reporting Person or Responding Person, and includes instances in which the Reporting Person is incapable of giving consent because of temporary or permanent mental or physical incapacity, including due to the influence of drugs or alcohol or because of youth.

Massachusetts law indicates that such acts are considered rape in any of these circumstances:

1. when a person is compelled to submit by force against their will,
2. compelled to submit by threat of bodily injury and if either such penetration results in or is committed with acts resulting in serious bodily injury, or
3. is committed by a joint enterprise, or
4. is committed during the commission or attempted commission of certain other crimes.

**Non-Consensual Sexual Contact**: The touching of the private parts of another person for the purposes of sexual gratification, without the consent of the Reporting Person, including instances where the Reporting Person is incapable of giving consent because of their age or because of his/her temporary or permanent mental incapacity.

**Sexual Exploitation**: occurs when a student takes non-consensual, unjust or abusive sexual advantage of another; for their own advantage, benefit, or gratification; or to benefit, gratify, or provide advantage to anyone other than the one being exploited; and that behavior does not otherwise constitute non-consensual sexual contact, non-consensual sexual intercourse or indecent exposure. Examples of Sexual Exploitation include, but are not limited to:

1. Prostitution
2. Videotaping
3. Going beyond the boundaries of consent
4. Voyeurism
5. Knowingly exposing another to or transmission of HIV or STD, or causing one to believe they have been exposed to an STD or STI
6. Inducing incapacitation for the purpose of having sex with the incapacitated person (this type of sexual exploitation occurs regardless of whether sexual activity actually takes place).

**Indecent Exposure**: Exposure of one's genitals or other intimate body parts where they can be readily observed by individuals who have not consented to the exposure and would reasonably find the behavior lewd, offensive, or threatening. Furthermore, engagement in sexual acts in a public place or where other parties who haven't consented are present or foreseeably likely to be present.

**Sexual Misconduct**: unwelcomed conduct of a sexual nature when:

1. submission to or rejection of such conduct by a person or persons is used as a basis for employment or educational decisions affecting such person or persons, or participation in University programs or activities; or
2. such conduct unreasonably:
   ○ interferes with a person or person's work or academic performance;
   ○ interferes with or limits a person or person's ability to participate in or benefit from a work or academic program or activity; or
   ○ creates an intimidating, hostile, or offensive working or academic environment.

**Stalking**: Any pattern of unwelcome conduct directed specifically at another person that threatens or endangers the physical or mental safety or property of that person (or a member of that person's family or household) or creates a reasonable fear or intimidation of such a threat or action.

**Against property**: No student shall take, possess, damage or deface any University or neighborhood property or any property not their own.

● **Theft**: Unauthorized possession or removal of property that can reasonably be determined to have been stolen from the University, another person, a business, or organization. Note: The university cannot mediate payment between two non-university entities for theft. To seek compensation for loss of money or property, civil court requests can be filed.
● **Damage to Property**: removal of, defacing, tampering with, damage to, or destruction of property that can reasonably be determined to be owned by the University or another person or business.

**Health and Safety**: No student shall refuse to observe any safety regulations or procedures. The following constitute a limited number of examples of this violation:

1. No student shall tamper with or otherwise misuse fire extinguishers, fire safety systems or other safety equipment on or off-campus.
2. No student shall cause a person or themselves to become at risk for falling from an unsafe height, such as by opening access to a rooftop or normally-restricted window.
3. No student shall refuse to follow published campus expectations related to prevention or spread of communicable diseases, including but not limited to viral, bacterial, and fungal outbreaks.
4. No student shall knowingly engage in disease-spreading behaviors within the campus community.

**Dangerous Conditions**: No student shall knowingly create a condition which unnecessarily endangers or threatens the safety of any student or other persons or of property on or off campus Examples of this include but are not limited to:

1. Students are prohibited from throwing things from roofs or windows, sitting on windowsills.
2. Students are prohibited from tampering with or damaging elevator equipment or other machinery.

3. Students are prohibited from creating conditions which are unsafe for members of the community, such as hosting large in-person gatherings with close contact wherein students may be exposed to the existence of potential communicable diseases or wherein students may be harmed by being in the presence of such pathogens.

**Disruptive Activities**: No student shall interfere with freedom of speech or movement, or intentionally disrupt or obstruct of teaching, research, administration, activities, or other functions or the incite others to do any of the above on or off campus. This includes noise disturbances on or off campus. Student tenants in off-campus housing will be held responsible for activities such as noise, large parties, inappropriate behavior, fights and property damage in and around their homes which are reported to the University as disruptive of good community relations.

**Weapons**: No student shall possess or introduce, on or off campus, dangerous weapons including, but not limited to: knives, brass knuckles, pellet guns, paint ball guns, archery equipment, martial arts weapons, pepper spray, mace, firearms and/or fireworks or other explosives. Students should be aware of the negative consequences of introducing plastic or toy weapons on campus which may be mistaken for real weapons, if perceived by others in the community to be real weapons, the weapons policy may be applied. Additionally, objects that may not be perceived as weapons, when weaponized to harm others, attempt to cause harm, or which a reasonable person would deem may be used to harm others, may constitute a violation of the weapons policy. Objects intended for self-defense, including pepper spray, must be legal in the Commonwealth of Massachusetts, and approved and registered with the UMass Lowell Police Department.

**Discrimination**: No student shall be denied or deny the rights or privileges of a member of the University Community or other individual on the basis of a protected class such as race, color, religion, gender, gender identity or expression, age, sex, sexual orientation, national origin, ancestry, disability, marital status, military status, or genetic information in the admission to and participation of the University's academic programs, activities, services, or employment. This Code adheres to the University's Affirmative Action Plan and Nondiscrimination Guidelines; more information is available on the Office of Equal Opportunity and Outreach website.

**Hazing**: A conduct or method of initiation into any student organization, whether on public or private property, which willfully or recklessly endangers the safety, the physical or mental health of any student or other persons. The implied or express consent of the victim will not be a defense. Apathy or acquiescence in the presence of hazing are not neutral acts; they are violations of this policy. Failure to report a potential violation of the hazing policy may result in action through the Student Conduct System. This applies to such behavior on or off campus. No student or organization shall be involved in any action which is considered hazing by this definition. The University has a Zero Tolerance Policy for any/all types of Hazing. See Appendix A, Policy Regarding the Practice of Hazing, as well as the Massachusetts General Law regarding Hazing.

**Solicitation**: No student or student organization may represent itself as acting for or on behalf of the University in any commercial enterprise or in the solicitation or collection of funds for any purpose whatsoever without approval in advance by the appropriate University authority. (This applies to all means of communication, including but not limited to mail, email, telephone, electronic devices, or other means.)

**False Alarm**: A false alarm is extremely dangerous as it may cause other students to ignore an actual fire. A violation of this policy, whether accidental or malicious, places the lives and safety of fellow students in danger. Activating an alarm unnecessarily may be subject to criminal prosecution or fines according to Massachusetts state law. Fire alarms caused by cooking and/or dirty ovens are avoidable and may warrant administrative hearings. Fire alarms caused by other careless behaviors or acts may warrant sanctions as high as termination of housing, suspension, or expulsion if found responsible.

## B. Security of buildings and facilities

Students of the University may enter and use all campus buildings and areas for the purposes assigned to these facilities and places during established operating hours. Exceptions to this rule are made only in the interests of safety, personal use and privacy, protection of valuable materials and equipment or to regulate access according to the hours which are normal for their assigned functions. When buildings or spaces within them are officially closed or restricted, limited access applies to all students of the University unless specifically exempted. Students must adhere to all local, state, and federal regulations regarding trespassing on private property.

1. **Unauthorized access**: No student shall use or possess any key to any building or area which they are not specially authorized to use or possess, or to trespass after notice on University owned or leased property or private or city owned property.
2. **Illegal entrance/Unauthorized presence**: No student shall break into, or without proper authority enter, any University parking area, building or room, or city-owned or private property; nor shall any student enter or remain in any private room or office of any student, faculty member, administrative office or other person on or off campus without the express or implied permission of any person or persons authorized to use or live in that room or office; nor shall any unauthorized student enter or remain in any building or facility at a time when that facility is officially closed. No unauthorized student shall enter any restricted areas; nor shall any student assist or make possible the unauthorized entry of any person into any restricted area. Restricted areas may include tunnels, roofs, posted or enclosed construction sites, secured utility areas, posted or gated parking areas, etc.
3. **Unauthorized parking**: No student shall park in any restricted area; nor shall any student assist or make possible the unauthorized entry of any person into any parking area.

## C. Integrity of transactions and records

The University expects all students to be accurate in all information provided in official documents and correspondences with the University and/or on behalf of the University, both written and verbal.

1. **False Information**: No student shall furnish forged or false information or misrepresenting the truth to the University or official and especially as this relates to a University conduct process. No student shall provide false information to University personnel either written or verbal. No student shall give false or misleading information which could damage or discredit another person. No student shall

perform the unauthorized alteration of University documents. Violations of this regulation will result in sanctions up to separation from the University for students and referral to the University Police Department for non-students.

2. **Misrepresentation**: No student shall represent themselves, as another person, in writing, in person or otherwise, with the intent to obtain benefit or to injure or defraud another.

3. **Misuse of records**: No unauthorized student shall enter, search, copy, steal, alter, forge or possess University/city records, documents or other material including misuse or unauthorized use of computers.

4. **Unauthorized use of services**: No student shall knowingly take or use any services without authorization. Examples include but are not limited to cable, internet, and/or phone service.

5. **Unauthorized Representation by a Student**: No student may represent the University or a registered organization without either the explicit prior consent of the officials of that organization or the appropriate University agency.

6. **Unauthorized Representation by a Student Organization**: No student organization may represent itself as acting for or on behalf of the University in any commercial enterprise or in the solicitation or collection of funds for any purpose whatsoever, without approval in advance by the appropriate University agency. (This applies to all means of communication including, but not limited to, mail, telephone, email, web-based programs or applications, or other means.)

7. **Electronic Resources**: The rights and privacy concerning the electronic resources of others must be respected. Attempts to bypass network and/or computer security (including probing activities), providing unauthorized services, and/or disabling or interfering with network access are explicitly prohibited. The illegal or unauthorized downloading and/or sharing of copyrighted materials is explicitly prohibited. Students will be held responsible for violations of the University's Network Usage Policy, and may be subject to state and federal law concerning copyright infringement. For more information please refer to University policies regarding electronic resources on the university Policy Portal.

## D. Official Directives

Within the University and city, authority is delegated specifically to some individuals and some official bodies to direct the action of other members of the University and city/state officials in fulfillment of legitimate purposes and functions of the University and community.

1. **Failure to Comply**: No student shall refuse to comply with the directions of University/city/state officials, instructional or administrative, including University Police and Residence Life Staff, acting in performance of their duties. Failure to comply with university directives designed to limit spread/exposure to contagions (including viruses, bacteria, fungi, parasites, etc.) constitutes a violation of the Student Conduct Code, the Residence Life Guidelines, or other policies at the university.

2. **I.D. Cards**: No student shall refuse to provide accurate identification upon request by any university official acting within the scope of their authority. All students must carry their University I.D. card with them at all times and immediately surrender their University I.D. card upon request by an authorized University/city /state official. Altering, improperly possessing, or lending a University I.D. Card, or any other identification card, to another person for any reason not expressly authorized by the University is a violation of this Code. A University I.D. Card falling into any of these categories may be confiscated by any student, staff, or faculty member in the course of their charged work responsibility.

## E. University and Neighborhood Activities

All legitimate activities of the University/city and its members can contribute to the achievement of its purposes and ideals. No single activity is above legitimate challenge or question, but activities shall be protected from peremptory unauthorized interruption.

1. **Individual/Organizational Activities**: No student shall obstruct or disrupt any educational, research, administrative, social or recreational activity of the University; nor shall any student create a nuisance to members or guests of the University or City. Additionally, actions and behaviors of recognized and unrecognized student organizations and other student groups, or in part, that violates the expectations of individual students and/or the organization itself will be subject to disciplinary action.

2. **Social Organizational Misconduct**: Any conduct engaged in by a university-affiliated organization collectively, or in part, that violates the expectations of individual students and/or the organization itself.

## F. Personal Activities

The University recognizes all local, federal and state laws and expects students to adhere to them. Specifically, the University puts students on notice that its campus offers no haven from applicable laws of personal behavior, and that students are specifically liable for any violation of local, state and/or federal laws.

1. **Alcohol**: The sale, giving, serving, or using of alcoholic beverages to or by those under the legal age is prohibited by Massachusetts Law. Possession of alcoholic beverages by those under the legal age is prohibited by Massachusetts Law. In addition, the University prohibits underage students from being in the presence of alcohol. See Appendix B, Alcohol Policy.

2. **Drugs**: No student shall knowingly sell, possess, manufacture, cultivate, distribute or use, or be in the presence of, on or off campus, substances defined by Massachusetts or Federal Law as illegal. Use/possession/sale/sharing of prescription medication that is not prescribed to a student is a violation of the Student Conduct Code, as well as a violation of the law. Additionally, the possession of drug paraphernalia is a violation of the Student Conduct Code. See Appendix C, Drug Policies and Regulations. Federal law imposes definite sanctions for drug use, sale, possession, distribution, manufacture and cultivation.

3. **Gambling/Fund Raising**: No student or student organization shall host or participate in activities that violate the Laws of the Commonwealth of Massachusetts pertaining to gambling and/or City of Lowell regulations governing gambling and fund raising.
4. **Lewd/Indecent Conduct**: Lewd or indecent conduct or expression, on or off campus/University property, or at University sponsored or supervised functions are a violation of the Student Conduct Code.
5. **Disorderly Conduct**: Drunkenness and/or disorderly conduct is a violation of the Student Conduct Code.

## G. Violation of Specific University Policy

Any violation of any University policies, including but not limited to the Residence Life Guidelines and any policies which are published in hardcopy, found on the website, or posted throughout campus, are considered violations of the Student Conduct Code. Any updates or modifications to these and other University rules, regulations, and policies may be found on the University policy portal.

# Sanctions

The following sanctions may be applied to any individual, group of individuals, or organization for violations of the University Conduct Code, University policies, or guidelines. However, the University is not limited to these sanctions or to the application of only one of these sanctions. Sanctions will be part of the student's file for seven (7) years from the date of the incident. Expulsion sanctions are kept for twenty-five (25) years. Sanctions for violations of this Conduct Code are progressive. Prior disciplinary actions may be taken into consideration and students may receive more severe sanctions than students with no prior records. Any student found responsible for an additional offense while serving a prior disciplinary probation or suspension may be suspended or expelled, depending on the circumstances. Notwithstanding the progressive nature of sanctions, the University reserves its right to impose any level of sanction it deems appropriate and warranted.

## Status Sanctions

Status sanctions will be given in each outcome of a disciplinary proceeding in which a student has been found in violation of the Student Conduct Code.

**Expulsion:** The involuntary and permanent separation of the student from the University. This sanction will be recorded on the student's transcript. The student will also be barred from the University premises.
**Suspension:** The involuntary separation of the student from the University, differing from expulsion in that it implies and states a time when a return may be possible. Thus, suspension may extend from 1) a semester, 2) a specified period, 3) longer than one semester, until a specifically designated date, or 4) until a stated condition is met, pending review by the Dean of Students and/or their designee. Suspensions that take effect during a semester will result in the loss of academic credit for that semester. The student cannot participate in any University sponsored activity and is barred from University premises. The student will not be able to make any academic progress towards their degree during the suspension period unless permitted by the Dean of Students and/or their designee, i.e. a student may not take classes at another institution during the suspension period and transfer the credits to the University.
**University Probation:** Probation is, in effect, a second chance offered to the student to help them re-evaluate their conduct, and benefit from experience. There are two forms of probation:
**Elevated Probation:** During this time, a student's status with the University can be at jeopardy. Further violations of the conduct code may result in housing removal (see "removal or relocation"), suspension (see "suspension"), or expulsion (see "expulsion") from the University. This sanction can be set for an indefinite period of time or until completion of degree.
**Probation:** This is the lower level of probation. Further violations of the student conduct code may result in more severe sanctions. This sanction can be set for an indefinite period of time or until completion of degree.
**Written Reprimand:** this written action is a formal admonition on behalf of the University and is intended to address behavior that has been deemed unacceptable for a University student. This action may be taken for repeated offenses or warnings as well.
**Removal or relocation from University Housing:** The University reserves the right to remove a student from University Housing, or to relocate them to another Residence Hall. If a student is removed from University Housing, they are then prohibited from all University Housing, including visiting other residents.
**Deferred Status Sanction:** Students may be placed on deferred suspension or deferred removal from university housing. In these cases, students will be eligible to continue making academic progress, or remain in university housing, following the status sanction of a deferred sanction. However, future violations of the Student Conduct Code will result in a strong consideration and likely recommendation of the status sanction for that which has been deferred.
**Social Probation or Student Organization Sanctions:** This status may be applied for failure to follow policies and/or directives related to student organization-sponsored activities on or off campus. Its primary effect is to suspend the privilege of sponsoring social events and/or to restrict access to specific campus facilities (use of facilities).

## Educational and Developmental Sanctions

The following sanctions may be given in addition to status sanctions to encourage the student to repair the harm to the campus community, engage in education related to the violation, or ensure that the student is better able to succeed in the future.
**Restitution:** If an infraction involves damages, or destruction or loss of property, monetary restitution may be imposed. Proof of payment of restitution must be provided to the Student Conduct Office or their designee. Failure to provide proof of payment may result in a hold on registration and/or transcripts, or denial of graduation. The University will neither assume responsibility for, nor act in the collection of, privately incurred debts involving students.
**Community Service:** Students may be asked to perform a specified number of hours of community service as a sanction for a violation of the Student Conduct Code. The responsibility to find a placement for the community service may fall to the student, and students will be asked to provide documentation of said service. Students may, generally, not use current places of employment as a placement for community service hour completion.

**No Contact Order:** The University reserves the right to restrict contact by any means (in person, verbal, electronic, or via third party) between multiple university community members. These restrictions will apply to all parties to prevent retaliation or furtherance of conflict that impacts the campus community.

Parental/Guardian Notification:  The University reserves the right to notify parent(s)/guardian(s) of any issues related to an alcohol/drug violation if the student is under the age of 21.  This notification can be written or verbal.

# Procedures for Adjudicating an Alleged Violation of the Student Conduct Code

## Other Sanctions

Other sanctions may be imposed instead of or in addition to those specified above, such as work requirements, restriction of privileges, and educational sanctions.

## Rights of Students Involved in the Student Conduct Code Process

Note that violations under the university's Sexual Harassment Grievance Procedure will follow the process outlined in that document (see Appendix F).

Students involved in the Student Conduct Process have the right to:

- Be notified of the alleged violations following receipt of a complaint or an investigation by the Student Conduct Office.
- Review relevant and appropriately redacted materials that are part of a student's educational record following an investigation, and prior to a hearing panel process or final decision being rendered by a Conduct Officer or Hearing Panel, regarding the incident(s).
- Be informed of the conduct process.
- Request an accommodation for the conduct process, based on a documented disability. Students may request accommodations which allow them to access the conduct process in an equitable manner. Students must request accommodations, which will be reviewed by the Office of Disability Services, and accommodations cannot be granted retroactively.
- Respond to the alleged conduct code violations. These responses can be done in writing and students will have the opportunity to review all relevant, redacted materials prior to submitting their response.
- Be accompanied by an advisor or support person of choice during any student conduct process in which the student is participating (please refer to Support Person guidelines).
- Be notified in writing of the outcome of the conduct complaint. Notifications are sent by university email.
- The right to appeal under the appeal guidelines, when applicable (see Appeals guidelines).
- For cases involving Sexual Misconduct, Stalking, Domestic/Dating Violence and other violent crimes, and for those which may be processed under the university's Sexual Harassment Grievance Procedure under Title IX, the complainant and responding student have the additional rights provided below and listed in more detail in the Sexual Harassment policy under Title IX (see Appendix F).
    - The right to be notified of all reporting options available, including making an anonymous report when available.
    - Support resources (ex. Counseling and Health Services, etc.) and remedial measures (ex. No contact orders, housing relocation, etc.) More specific details can be found on the university's <u>Sexual Harassment Prevention & Education website</u>.
    - The right to request confidentiality (confidentiality is not defined as anonymous).
    - The right to notice of the outcome to the complaint simultaneously in writing through University email. Note that notification of the outcome of a complaint for a complainant is limited to only the specific charges listed above, namely violations of sexual misconduct standards and other violent crimes.
    - The same rights to appeal (see Appeals guidelines).
    - The right not to be required to be in the same room or meeting as the respondent or complainant during the investigative process.
    - The availability to request use of alternate methods of participation in live hearings through use of technology or physical barriers.
    - Notice of possible sanctions that the University may impose following the determination of the hearing panel.

## Case Referral

Any member of the University community or persons unaffiliated with the University may notify the Office of Student Conduct of a student's violation of the University's Student Conduct Code. Notifications must be made within one year (365 days) of the alleged violation in order for charges to be brought. However, charges under the Interpersonal Misconduct and Sexual Misconduct subsections of this code may be brought at any time while the charged student is enrolled at the University. Any formal reports of sexual harassment or sexual misconduct, as defined in the Sexual Harassment Grievance Procedure (see Appendix F), must be reported to the University's Title IX Coordinator. Information can be found through the University's Equal Opportunity & Outreach Office, as well as in Appendix F. Reports made to the Title IX Coordinator may be dismissed under the Sexual Harassment Grievance Procedure, and referred for investigation of potential violations of the student conduct code, which will be processed through the student conduct process. The University may independently investigate an allegation of student misconduct whether or not it has been submitted in writing and whether or not it is beyond the three hundred sixty-five days provided in this paragraph.

The University does not tolerate retaliation toward a University community member who has reported a potential conduct violation. Please see Retaliatory Harassment.

## Process

Any formal reports of Sexual Harassment must be reported to the University's Title IX Coordinator. Information can be found through the University's Equal Opportunity & Outreach Office. The below process is reserved for cases of student misconduct not processed through the Sexual Harassment Grievance Procedure (see Appendix F).

Upon receipt of a complaint or formal report, the Student Conduct Office will review the complaint and gather the necessary information to determine if further action is appropriate. If it is determined that there is sufficient information to charge a student with a violation of the Code, charges will be brought and the case must be heard through resolution.

It is the policy of the University to inform both the complainant and the responding student of the outcome of any campus disciplinary proceeding involving sexual misconduct, stalking, dating/domestic violence and, subject to FERPA, other violent crimes, as provided under the Rights of Students, provided above. The complainant and respondent shall be provided with a written list of the Rights of Students.

Disciplinary flags may be set on a student's record if a student fails to respond to notification of an alleged violation of the University's Student Conduct Code; fails to complete sanctions; when the University is concerned that a student's conduct affects the safety and well-being of the University community; or when a student is suspended or expelled from the University. When a disciplinary flag has been set, the student cannot register for classes and may not be eligible for other academic services until meeting with a Conduct Officer.

Formal rules of process, procedure, and/or technical rules of evidence, such as are applied in criminal or civil court, are not used in the campus conduct process.

When the Student Conduct Office determines that a violation of the University's Student Conduct Code is likely to have occurred, it will in a timely fashion complete the following actions:

## Campus Conduct Conference Process

When the alleged violation(s) of the Student Conduct Code may result in written reprimand, university probation (of either level), housing relocation, and/or other lesser sanctions, the following will occur:

1. Notify the student that they have allegedly violated the Student Conduct Code and provide a time no sooner than two (2) business days, in accordance with the student academic calendar, for a Campus Conduct Conference. This notification will be in writing sent through University email. Failure to appear for this Campus Conduct Conference may result in a decision being made on the basis of available information, which may lead to determination of responsibility, imposition of sanctions in absentia, and forfeiture of the right to appeal. Refusal to accept notification is not grounds for failing to appear at the Campus Conduct Conference.

2. A Conduct Officer will be selected to investigate the matter and make a determination as to whether the Code has been violated and determine sanctions, if applicable. Students, through the conduct office and the Conduct Officer, may request a submission of first-hand, written, factual accounts by witnesses and/or the appearance of witnesses who can provide information relevant to fact-finding. The Conduct Officer shall facilitate this process and approach witnesses, and may request that the authors appear at a Campus Conduct Conference by making such request, either verbally or in writing. The Conduct Officer may exclude repetitive information or information that is not first-hand or relevant knowledge, as determined by the Conduct Officer. Relevant and appropriately redacted materials may be reviewed by responding students (and complainants in specific, limited cases) prior to the Campus Conduct Conference at the student's request, which must be made at least one business day prior to the meeting. The Campus Conduct Conference is a closed meeting. The Conduct Officer has the discretion to include other individuals as the Campus Conduct Officer deems appropriate. During the Campus Conduct Conference, the following will occur:

    ○ A student may be accompanied by a Support Person (please refer to Support Person guidelines).
    ○ The student will be allowed to provide their account of the incident.
    ○ Questions may be asked by the Conduct Officer to the student and any witnesses. Student and/or witnesses will not address each other. The student may ask questions through the Conduct Officer of any student and/or witnesses. No direct communication between students and/or witnesses will be allowed. If the Conduct Officer deems the question(s) inappropriate, they will not be considered. This is to maintain the educational and non-confrontational tone to the Campus Conduct Conference.
    ○ A decision regarding an alleged Student Conduct Code violation will be made under the "Preponderance of the Evidence" standard.
    ○ At the end of the Campus Conduct Conference one of the following will occur:
        1. The Conduct Officer may make a decision regarding the alleged violation of the Student Conduct Code and, if the student is deemed responsible, determine sanctions.
        2. Conduct Officer does not make a determination immediately, in order to consider the matter further. The Conduct Officer will notify the complainant (if appropriate) and the responding student of the decision in writing, within five (5) business days of the Campus Conduct Conference.
    ○ If the student is found responsible for a violation and participated in the Conduct Conference, the student has the right to appeal. For more information, see Appeals.

## Investigation/Hearing Panel Process

When the alleged violation(s) of the Student Conduct Code have the potential to result in removal from housing, suspension, or expulsion, or for cases of sexual misconduct or other violent crime violations, an investigative and hearing panel model will be utilized:

- The Student Conduct Office will notify the student through University email that they are party to an investigation. A student receiving this letter will be offered an opportunity to meet with a member of the Student Conduct Office. That meeting is entirely optional, but will allow the student to meet with a Student Conduct Office staff member to review the student conduct process and their rights in the process. The following information will be provided to the student in writing, either in this process review meeting, or by email:
  - List of rights of a student involved in the conduct process (see Rights of Students Involved in the Student Conduct Code Process).
  - Name(s) of the investigators assigned to the matter
  - Information to learn more about the investigative and hearing process via a link to the Student Conduct Code.
  - A summary of what is alleged to have occurred, including (if known) the alleged date of occurrence, location, and details about the origination of the report, along with the policy which the behavior purports to have violated. This information is prior to a full investigation, and is subject to change based on information collected through the investigative process.

- A neutral investigator will be appointed by the Director of Student Conduct or designee (The Director may serve as the investigator) to conduct the investigation. Investigative interview will be audio recorded. The investigator will make all reasonable attempts to gather all relevant information to determine whether the Code was violated, based on the preponderance of the evidence. This includes, but is not limited to: interviewing the complainant (if applicable), interviewing the responding student, interviewing applicable relevant eyewitnesses, and reviewing physical evidence (ex. Screenshots, call logs, etc). The investigator is primarily responsible for gathering information concerning the complaint. However, each party will be asked to identify witnesses and provide relevant information, including but not limited to, documents, communications, and photographs. All parties are encouraged to provide relevant information as promptly as possible. The investigator reserves the right to identify a reasonable deadline for information selection, as well as the relevance of provided information or witnesses.

- At the conclusion of the investigation, the investigator will present their report to the Director of Student Conduct or designee. The report shall include (if applicable): summaries of interviews, statements from involved parties and witnesses, physical evidence (ex. screenshots, call logs, etc.). Additionally, the report shall include recommendations of violations of the University's Student Conduct Code, if applicable (based on a "Preponderance of the Evidence").

- After review of the initial report by the Office of Student Rights & Responsibilities, the responding student, and complainant limited to cases of sexual misconduct or violent crime standards, will be notified simultaneously in writing through University email of the alleged conduct charges against the responding student. The students will have the opportunity to review the investigator's report and respond in writing. Students will have no fewer than ten (10) days to submit their written response. The investigator will consider the received responses and weigh whether the responses change the finding(s). Any changes deemed appropriate, as well as the responses by both the respondent and complainant (if applicable), will be shared with the hearing panel or decision maker.

- If the University investigator has found sufficient evidence to move forward with charges of violations of the Student Conduct Code, the responding student will have the opportunity to accept or reject responsibility for any applicable charges. The final decision will be made by a hearing panel or case administrator on the outcome of the matter. The hearing panel will be scheduled no sooner the ten (10) days from the Respondent, and Complainant if applicable, receiving the investigation report.
  - The hearing panel will be comprised of at least two (2) administrators trained by the University. Significant aspects of a hearing include:
    1. Student may have a support person, who can present questions for the panel to consider, but may not testify on the student's behalf.
    2. If a student wishes to ask questions, they must present them to the panel, in writing, which will determine if the question is relevant and must be answered by the other party. The respondent and complainant will not be permitted to ask one another questions directly.
    3. All students that participate in the process must be willing to submit to questioning by the hearing panel. This may include questions submitted by the other parties in the hearing.
    4. Students are welcome to provide witnesses.
       - a. A student must name witnesses five (5) days prior to the hearing.
       - b. Witnesses can provide information in writing if they prefer.
    5. Decisions about charge responsibility will be made on the preponderance standard following a confidential deliberation by the hearing panel.
    6. Following the decision, the Director of Student Conduct or designee will provide the panel information for consideration in sanctioning. That information may include, but is not limited to: the respondent's conduct history, precedent from previous cases, etc.
    7. The panel's decisions will be provided to the student in writing.
    8. Students charged may appeal on three (3) possible grounds (see Appeals):
       - a. Procedural error
       - b. Conflict of interest by investigator or hearing panelist
       - c. New and relevant information
- When an appeal is granted, a new hearing may be organized. There is no possibility for further appeal following the outcome of the new hearing.
- Appeal requests are due ten (10) business days following the outcome notice from the hearing.
- Students who do not participate in the hearing are not eligible to appeal.
- All live hearings are audio recorded.

## Support Persons

A student may elect to be accompanied at all student conduct processes by a support person of their choice. A student should select a support person whose schedule allows attendance at the scheduled date and time for the meeting(s) because delays will not normally be allowed due to the scheduling conflicts of a support person. If a student elects to have an attorney present as their support person, it will be at the sole cost and expense of the student. The student must notify the Student Conduct Office of who their support person is within one business day of any meeting or hearing panel. Student conduct processes will not be scheduled based on a support person's availability. Note that support persons in the student conduct process are separate from the role of advisor under a formal complaint processed through the Sexual Harassment Grievance Procedure. In cases of formal complaints under the Sexual Harassment Grievance Procedure, that process will be followed (see Appendix F).

The role of the support person in all cases is limited to supporting the student during the conduct process. The support person may not testify on behalf of the student, answer questions directed to the student, and/or address or ask the other party questions directly. As noted above, advisors in the Sexual Harassment Grievance Procedure will be expected to adhere to the role in that process, and the support person role in the student conduct process is unique to the student conduct procedure. However, the support person may assist the student in providing questions to be considered by the panel in a live hearing. At no time may the support person be a firsthand witness to the incident(s) in question.

The student must direct all questions and/or concerns about any conduct investigative process to the Conduct Officer or Investigator.


## Accommodations for Students with Disabilities

The University is committed to providing appropriate accommodations to students with disabilities so that all students have meaningful access to all University programs and services, including the Student Conduct Process.

All students with disabilities who are involved in the Student Conduct Process, including complainants and responding students, support person(s), and witnesses may seek accommodations for any stage of the Student Conduct Process. Any student requesting an accommodation must do so far enough in advance to allow the request to be reviewed and an appropriate accommodation identified and implemented. Although there is no firm deadline beyond which an accommodation cannot be requested, the student will be held accountable for making any request in a timely fashion; the University may not be able to provide an accommodation which is not requested at least five (5) business days before the accommodation is needed. Accordingly, each student seeking an accommodation is strongly encouraged to do so as early as possible in the Student Conduct Process.

A request for accommodation shall be made to the Disability Services Office. The request will be reviewed by a member of the Disability Services Office, who will apply appropriate legal standards and University policies and procedures to determine what accommodation, if any, is appropriate. The student will be given an opportunity to have an interactive role in the review process—i.e., to discuss the request with the Disability Services Office—before the review is completed. The Disability Services Office may require the student to provide appropriate documentation from qualified health care professionals to support the request. In addition, the Disability Services Office, at their discretion, shall consult as appropriate with the Conduct Officer or the Associate Dean of Student Affairs or their designee, or other experts of the Disability Services Office staff member's choosing. The Disability Services Office will make their determination in light of the student's particular disabilities and the nature of the Conduct Process, as informed by any consultations, relevant documentation, and relevant previous accommodations provided to the student. The student will be given an explanation of the Disability Services Office's determination.

If the student requesting accommodations disagrees with the Disability Services Office's determination on reasonable accommodations, they may appeal the determination to the Office of Equal Opportunity and Outreach within five (5) business days of the Disability Services Office's decision.


# Appeals

Either the respondent or complainant (limited to cases involving sexual misconduct or violent crime standards only) may appeal a decision, in writing, to the Student Conduct Office. All appeals are due to the Student Conduct Office within ten (10) business days following the outcome notice from a conduct conference or a live hearing. Date of notification is day the letter is sent via University email. During the appeals process, sanctions may remain in place. An appeal must specify grounds that would justify consideration. Appeals will only be accepted for review if based upon one or more of the following criteria:

- If the student can demonstrate new and significant evidence that would substantially alter the findings of fact, not previously known to the appellant that has been discovered, and is newly available during the appeal process. The new evidence could not have been discovered through the exercise of reasonable diligence, and the absence of which was sufficient to materially affect the outcome.
- If the student can demonstrate that significant procedural errors of the Code process occurred that were substantial enough to effectively and detrimentally affect the outcome.
- If a student can demonstrate a clear conflict of interest, or bias, by either the investigator or a hearing panelist that is sufficient to materially influence and affect the outcome of the case.

The Dean of Student Affairs and Enrichment or designee will designate one staff person to coordinate the appeal. This designee will make a determination of whether or not the appeal has merit based on the above-stated criteria. If the appeal does not have merit, the findings and sanctions will stand with no further appeal, and the students will be notified in writing (and complainant if the claim involves sexual misconduct or other violent crimes, subject to FERPA). If the appeal has merit, one of the following will occur:

- If the case was heard by a Campus Conduct Conference the designee can take the following actions after reviewing the case:
  - Uphold the finding and sanctions. This decision will be delivered in writing. This decision is final and cannot be appealed.
  - In light of new and significant information that would substantially alter the findings of fact, the case will be referred for a new Campus Conduct Conference. The Conduct Officer selected will not be the original Conduct Officer. This decision will be delivered

in writing. This decision is final and cannot be appealed.
  - In light of a failure to follow the procedures outlined herein, the case will be referred for a new Campus conduct conference or live hearing. The Conduct Officer selected will not be the original Conduct Officer. This decision will be delivered in writing. This decision is final and cannot be appealed.
  - In light of clear conflict of interest or bias, the case will be referred for a new Campus conduct conference or live hearing. The Conduct Officer selected will not be the original Conduct Officer. This decision will be delivered in writing. This decision is final and cannot be appealed.
- If the case was processed through the investigative model, the designee can take one of the following actions after reviewing the case:
  - Uphold the findings and sanctions. This decision will be delivered in writing. This decision is final and cannot be appealed.
  - In light of new and significant information that would substantially alter the findings of fact, the investigation will be referred to a new review panel. The decision of the new review panel will be final and cannot be appealed.
  - In light of a failure to follow the procedures outlined herein, the investigation will be referred to a new review panel. The decision of the new review panel will be final and cannot be appealed.
  - In light of clear conflict of interest or bias, the investigation will be referred to a new review panel. The decision of the new review panel will be final and cannot be appealed.

All decisions regarding the appeals will be delivered in writing through University email.

## Records and Confidentiality

The Student Conduct Office shall maintain the official disciplinary records and a disciplinary action tracking system, which shall include, but not be limited to, the student's name and related identifying information, applicable Student Conduct Code section(s), parties involved, description of the incident, sanction(s), expiration dates, agreements or restrictions, and any other data deemed relevant. Such record will be maintained for seven (7) years after the date of incident for all cases excepting those resulting in expulsion. Cases resulting in expulsion will be maintained for twenty-five (25) years, and a notation will be made on the official university transcript.

**Student Conduct records and related information shall be made available to Conduct Officers and other University personnel designated as necessary.**

Students may request, in writing, to review their own disciplinary records and related information by contacting the Office of Student Conduct. Except as provided in the Student Conduct Code, the University shall not communicate a student's disciplinary record and related information to any person or agency without prior written consent of the student or, when the student is a minor, the student's parents or legal guardian, except as required or permitted by law.  If records are shared under guidance of law, personal identifiable information will be redacted as appropriate.

## Policies Regarding the Practice of Hazing

### Hazing Policy

The University of Massachusetts Lowell has a Zero Tolerance Policy for any/all types of Hazing. Hazing is defined as the following: As conduct or method of initiation into any student organization, whether on public or private property, which willfully or recklessly endangers the physical or mental health of any student or other persons. The implied or express consent of the victim will not be a defense. Apathy or acquiescence in the presence of hazing are not neutral acts; they are violations of this policy. Failure to report a potential violation of the hazing policy may result in action through the Student Conduct System. To report a potential violation of the hazing policy you can use the following methods:

- Student Conduct Office
  Phone: 1-978-934-2100
  Email: studentconduct@uml.edu
- Dean of Students Office
  Phone: 1-978-934-2100
- University of Massachusetts Police Department
  Phone: 1-978-934-2398
  Anonymous tip line: 1-978-934-4213
- National toll-free anti-hazing hotline
  1-888-NOT-HAZE (1-888-668-4293)

## Hazing Law

Hazing is a violation of the Laws of Massachusetts please refers to Chapter 269 (sections 17-19) of General Laws as Amended January 5, 1988:

### Section 17.

Whoever is a principal organizer or participant in the crime of hazing, as defined herein, shall be punished by a fine of not more than three thousand dollars or by imprisonment in a house of correction for not more than one year, or both such fine and imprisonment.

The term "hazing" as used in this section and in sections eighteen and nineteen, shall mean any conduct or method of initiation into any student organization, whether on public or private property, which willfully or recklessly endangers the physical or mental health of any student or other person. Such conduct shall include whipping, beating, branding, forced calisthenics, exposure to the weather, forced consumption of any food, liquor, beverage, drug or other substance, or any other brutal treatment or forced physical activity which is likely to adversely affect the physical health or safety of any such student or other person, or which subjects such student or other person to extreme mental stress, including extended deprivation of sleep or rest or extended isolation.

Notwithstanding any other provisions of the section to the contrary, consent shall not be available as a defense to any prosecution under this action.

## Section 18.

Whoever knows that another person is the victim of hazing as defined in section fifteen and in seventeen and is at the scene of such crime shall, to the extent that such person can do so without danger or peril to themselves or others, report such crime to an appropriate law enforcement official as soon as reasonable practicable. Whoever fails to report such crime shall be punished by a fine of not more than one thousand dollars.

## Section 19.

Each institution of secondary education and each public and private institution of post-secondary education shall issue to every student group, student team or student organization which is part of such institution or is recognized by the institution to exist as an unaffiliated student group, student team or student organization, a copy of this section and sections seventeen and eighteen; provided however, that an institution's compliance with this section's requirements that an institution issue copies of this section and sections seventeen and eighteen to unaffiliated student groups, teams or organizations shall not constitute evidence of the institution's recognition or endorsement of said unaffiliated student groups, teams or organizations.

Each such group, team or organization shall distribute a copy of this section and sections seventeen and eighteen to each of its members, plebes, pledges or applicants for membership. It shall be the duty of each such group, team or organization, acting through its designated officer, to deliver annually, to the institution an attested acknowledgement stating that such group, team or organization has received a copy of this section and said sections seventeen and eighteen, that each of its members, plebes, pledges, or applicants has received a copy of sections seventeen and eighteen, and that such group, team or organization understands and agrees to comply with the provisions of this section and sections seventeen and eighteen.

# Alcohol Policy

## Preamble

All students/employees at the University of Massachusetts Lowell are expected to abide by all Federal, State and local laws, including those regulating the use, possession, sale, distribution, manufacture and cultivation of illicit drugs and alcohol. In addition, Congress amended Title XII of the Higher Education Act of 1965 by adding a section pertaining to Drug Free Schools and Campuses. Under this new amendment any institution receiving federal funds, including federal student loan programs, must adopt and implement policies to prevent the use of illegal drugs and alcohol by students and employees.

Financial aid penalties for drug offenses: Beginning on July 1, 2000 the 1998 amendments to the Higher Education Act require the suspension of eligibility for financial aid for students convicted of drug related offenses. The length of suspension of eligibility is not less than one year and varies depending on the nature of the offense. Full details are available from the Office of Student Financial Assistance.

The University of Massachusetts Lowell is committed to promoting a climate which supports academic and personal growth and success and the well-being of all members of the academic community. To safeguard and promote a healthy academic and living environment, the University promulgates rules and regulations for the behavior of all members of the community. These are outlined in several major policy statements i.e., the student conduct code, the hazing policy, the alcohol and other drug policies, etc. Copies of these campus regulations are available on the web on Human Resources Policies webpage.

It is the responsibility of each member of this community to understand and comply with all campus rules and regulations. These regulations include all federal, state and local laws including the Drug Fee Schools and Community Act of 1989, the Drug Free Workplace Act of 1988 and the Higher Education Act (as amended in 1998). As a member of the university community, it is your responsibility to know and abide by all campus rules and regulations, to understand the risks associated with the use and abuse of alcohol and other drugs, and to assist in creating an environment that promotes health-enhancing attitudes and activities.

The following definitions apply to the Drug and Alcohol Policies for the University of Massachusetts Lowell community, including students and guests:

- **Area under jurisdiction** of the University includes all:
  1. property occupied, leased or used by the University;
  2. property owned, occupied, leased or used by the University of Massachusetts Lowell Building Authority; and
  3. property occupied or used by any other university-recognized organizations.
- **Alcoholic Beverage** - any liquid intended for human consumption as a beverage and containing one or more of alcohol by volume at sixty degrees Fahrenheit
- **Controlled substance** - any substance listed in schedules I. through V. of section 202 of the Controlled Substances Act (21 USC. 812).
- **Conviction** - a finding of guilty (including a plea of nolo contendre) or imposition of sentence, or both, by any judicial body charged with the responsibility to determine violations of the Federal or State criminal drug statutes;
- **Employee** - elected or appointed officers or employees, including all members of the University faculty and staff whether serving full or part-time, temporary or permanent, compensated of uncompensated.
- **Manufacture** - the production, preparation, propagation, compounding, conversion, or processing of a controlled substance.
- **Possession** - the knowing or intentional possession of a controlled substance; having direct physical control over a controlled substance.
- **Student** - all persons taking courses at the University, either full-time or part-time; pursuing undergraduate, graduate, or professional studies; persons who withdraw after allegedly violating the Student Conduct Code; persons who are not officially enrolled for a particular

term but who have a continuing relationship with the University; persons who have been notified of their acceptance for admission; or persons who are living in University residence halls or apartments, although not enrolled in this institution
- **University** - the University of Massachusetts Lowell, all campuses and all land, buildings, facilities, and other property in the possession of or owned, leased, used, operated or controlled by the University.
- **Organization** - all recognized student organizations, governments, and groups of students; all faculty, staff and alumni organizations using areas under University jurisdiction and all non-University organizations requesting use of any University facilities.
- **Authority** - these regulations are promulgated by the Trustees of the University pursuant to applicable provisions of Massachusetts General Laws, Chapter 15A, sections 10 (g).

# University of Massachusetts Lowell Alcohol Policy

## General Policy Regulations

Federal, state, Local and University Sanctions for the unlawful use, possession, distribution, sale, manufacture, or production of alcohol except as may be provided in the University of Massachusetts Lowell Alcoholic Beverage Policy (Attachment A hereto):

1. No person, group, or organization shall sell, dispense, produce or manufacture alcoholic beverages, with the exception of those areas and/or events approved by the Chancellor.
2. No person shall sell, give, serve, or use alcoholic beverages to or by those under the legal age, as prohibited by Massachusetts Law. Possession of alcoholic beverages by those under 21 years of age is prohibited by Massachusetts Law.
3. No person shall operate a motor vehicle while under the influence of alcohol.
4. No alcoholic beverages shall be sold, dispensed, or delivered to a person who would be deemed by a reasonable person to be intoxicated, or to a person who is known to have been intoxicated within six months of the last proceeding.
5. No person under 21 years of age shall transport, purchase, sell, possess or receive alcoholic beverages unless accompanied by their parent or legal guardian. A person who is over the age of 18 may transport or carry alcoholic beverages in the course of their bona fide employment in an establishment licensed to sell alcoholic beverages.
6. No person under 21 years of age shall use the liquor identification card of another, or furnish false identification in obtaining such a card, or alter or deface such a card.
7. No person shall supply their liquor identification card to someone under 21 years of age, or provide to another a false identification card for their personal use.
8. No person shall appear in a state of intoxication in a public place or disturb the peace in any manner while intoxicated.
9. Students who are found in violation of these stated prohibitions may be subject to arrest and conviction under the applicable criminal laws of the Commonwealth. Conviction can result in sanctions including probation, fines and imprisonment.
10. Students who are found to be in violation of these stated prohibitions are subject to discipline in accordance with the requirement of the University's Student Conduct Code and Disciplinary Process.
11. Employees found to be in violation of these stated prohibitions are subject to disciplinary action in accordance with any applicable bargaining agreements.

The above listed general policy regulations should not be considered as an exhaustive restatement of the pertinent Federal, State and local laws regarding the use of alcohol. All members of the University of Massachusetts Lowell community are expected to acquaint themselves with and abide by all laws governing the acquisition, possession, transportation, consumption and sale of alcoholic beverages.

## Residence Hall Alcohol Policy

As in accordance with the laws of the Commonwealth, no alcoholic beverages shall be offered, gratuitously or for sale, to a person under the age of 21, either privately or at a group function, whether it is at an approved function or informal gathering in the residence halls. The possession, consumption or being in the presence, of alcoholic beverages in the residence halls by a person less than twenty-one years of age is prohibited.

1. Students under the age of 21 years are not permitted to possess, consume, or be in the presence of alcoholic beverages. A resident or guest who is of legal drinking age may possess and consume alcoholic beverages in the residence hall only in the privacy of the resident's own room or in the room of another resident who is of legal drinking age and who is present during the consumption. The door of the room must be kept closed. Alcohol and alcohol containers, including decorative bottles and cans, whether empty or full are prohibited from Halls at all times. Behaviors committed under the influence of alcohol will be considered a violation of the Alcohol Policy.
2. The purchase or delivery of alcoholic beverages in the residence halls, gratuitously or for sale, to a person under the age of 21 is prohibited and shall constitute a major infraction of University regulations. Commercial deliveries of alcoholic beverages to the residence halls are prohibited.
3. Only residents of legal drinking age may bring alcoholic beverages into their own residence hall. At no time may a guest of any age or resident under the age of 21 bring alcoholic beverages into a residence hall. University Police or Residence Life staff will confiscate all alcohol in the possession of any guest or resident students under the age of 21 in public areas; in addition, any open containers of alcohol will be confiscated regardless of age.
4. The possession or use of alcoholic beverage containers such as kegs, partial kegs, mini-kegs, punch bowls, beer balls or any common containers, whether partially full or empty, in any residence hall or grounds by anyone, whether of legal age or not, shall constitute a major infraction and will result in immediate removal from housing. The possession or use of funnels is strictly prohibited.
5. Drinking games, funnels, drinking challenges, and other methods that promote consumption of alcohol in an accelerated manner are expressly forbidden.
6. Upon request by University personnel (i.e. residence hall staff, University Police, administration personnel) residents must provide a valid form of identification upon entering a residence hall or while transporting or consuming alcoholic beverages within a building or on University grounds.

7. In the event that a resident or guest is deemed by University Police or Residence Life staff to be intoxicated, the resident and or guest will be asked to remain in the residence hall under host supervision until determination can be made that the intoxicated person(s) is in a safe condition. In addition, drunken disorderliness in any University building or grounds is prohibited and shall constitute a major infraction of University regulations. In a situation where a student is determined to be in an unhealthy state the University Police or Staff may call the parent or guardian to take custody of their student.

8. All persons are prohibited from drinking alcoholic beverages or having open or previously opened alcoholic beverage containers in all residence hall public areas, including hallways, stairwells, bathrooms, lounges, lobbies, and outside grounds including, stairs, lawns, roofs, parking lots, patios, etc.

9. Parties and gatherings where alcohol is present, informally or otherwise, are strictly prohibited in all residence halls. Any gatherings where more than two guests per occupant are present, and alcohol is present will constitute a party or gathering and may be disbanded by University Police or Residence Life staff. In these events, the alcohol will be confiscated regardless of the amount or age of the residents.

10. No more than 1 open container, cup, bottle or can may be present for each individual above the legal drinking age when in the presence of underage individuals in a room occupied by of age students. University staff will construe additional open containers in excess of the number of legal age individuals as consumption by minors.

11. Alcohol may not be stored or displayed in suite common areas unless all assigned occupants are of legal drinking age, this includes empty decorative bottles and cans.

## Health Risks

Alcohol consumption causes a number of marked changes in behavior. Even low doses significantly impair the judgment and coordination required to drive a car safely, increasing the likelihood of an accident. Low to moderate doses of alcohol also increases the incidence of a variety of aggressive acts, including domestic violence and physical altercations. Moderate to high doses of alcohol cause marked impairment in high mental functions, severely altering a person's ability to learn and remember information. Very high doses cause respiratory depression and death. If combined with other depressants of the central nervous system, much lower doses of alcohol will produce the effects just described.

Repeated use of alcohol can lead to dependence. Sudden cessation of alcohol intake is likely to produce withdrawal symptoms, including severe anxiety, tremors, hallucinations and convulsions. Alcohol withdrawal can be life threatening. Long-term consumption of large quantities of alcohol, particularly when combined with poor nutrition, can also lead to permanent damage to vital organs such as the brain and liver. Mothers who drink alcohol during pregnancy may give birth to infants with fetal alcohol syndrome. These infants have irreversible physical abnormalities and mental retardation. In addition, research indicates that children of alcoholic parents are at greater risk than others of becoming alcoholics.

## Sanctions

Alcohol Policy Violation Minimum Sanctions:

| Violation | Sanctions |
|---|---|
| First time in the presence of | Written reprimand<br>$25 fine*<br>AOD education<br>Parental notification for students under 21 |
| First use / possession / second in presence | Written reprimand<br>$75 fine*<br>AOD education<br>Parental notification for students under 21 |
| Second use / possession / subsequent in the presence of | Probation for a minimum of one academic year<br>$100 fine*<br>AOD education<br>Parental notification of students under 21 |
| Subsequent use/possession | Consideration of removal from housing<br>Probation for a minimum of one academic year<br>$100 fine*<br>AOD education<br>Parental notification for students under 21 |
| Alcohol violations requiring medical intervention | Written reprimand<br>$100 fine*<br>AOD education<br>Parental notification for students under 21 |
| Second alcohol violations requiring medical intervention | Probation for a minimum of one academic year<br>$100 fine*<br>AOD education<br>Parental notification for students under 21<br>Possible meeting with student and parents based on age of student and financial dependency |
| Subsequent alcohol violations requiring medical intervention | Consideration of removal from university housing<br>Probation for a minimum of one academic year<br>AOD assessment by off-campus provider (see below, Alcohol and Other Drug Education Program, step 4) |
| Providing to minors/sale/distribution | Consideration of status sanctions ranging from probation to suspension or expulsion<br>$75 fine<br>AOD education<br>Parental notification for students under 21 |
| Decorative bottle sanctions | Written reprimand |

*Fines collected as sanctions are utilized for Wellness/Substance Education.

### Referral/Resources for Alcohol-Related Problems

Services and resources are available to all members of the University community to provide accurate information relating to alcohol, to support individual needs and to assist at crisis points. Listings of resources on campus are available by calling the Counseling Center (at 978-934-4331), University Health Services (at 978-934-4991), Human Resources (at 978-934-3555) or Student Affairs (at 978-934-2100).

In addition, individuals who wish to enroll in an alcohol rehabilitation program should check the University's insurance or their own insurance to verify if they are covered for these services.

## Drug-Free Schools and Campuses Drug Policies and Regulations

Please see Appendix B for the University's Alcohol Policies and Regulations.

No students shall knowingly sell, possess, manufacture, distribute or use on or off campus, substances defined by Federal or State law as illegal. Use/possession/sale/sharing of prescription medication that is not prescribed to a student is a violation of the Student Conduct Code, as well as a violation of the law. Additionally, the possession of drug paraphernalia is a violation of the Student Conduct Code. Paraphernalia is defined as any device used to use illegal drugs.  This includes but not limited to: Bongs, Pipes, Rolling Papers, etc. It is the policy of the University of Massachusetts Lowell to maintain a drug free workplace. As a condition of employment, all University employees are required to follow this policy.

### Medical Marijuana Clause

Although Massachusetts law permits the use of medical marijuana, federal laws prohibit the use, possession, and/or cultivation of marijuana at educational institutions.  Federal laws also require any institution of higher education which receives federal funding to have policies prohibiting the possession and use of marijuana on campus.  The use, possession, or cultivation of marijuana for medical purposes is therefore not allowed in any University housing or on any other University property.  The University will continue to enforce its current policies regarding controlled substances, and any students, faculty or employees who violate University policy prohibiting the use or possession of illegal drugs on campus, may be subject to disciplinary action.

### Health Risks

Illegal drugs and misuse of controlled prescription drugs pose short and long-term health risks to the user. Categories of drugs include narcotics, barbiturates, stimulants, and hallucinogens (not to be confused with classes of drugs according to Commonwealth of Massachusetts Drug Laws). Not only is the drug risky, the route of administration or the way the drugs is taken into the body is also correlated with certain health risks.

Some drugs are smoked (marijuana, "crack", opium, "crank"). Smoking any substance, especially marijuana, is found to have a detrimental effect on the lungs and upper airway.

Other drugs are "snorted" or inhaled (cocaine, heroin, inhalants) leading to injury of the lining of the nose.

Many drugs are ingested and some drugs are injected under the skin (skin-popping). Drugs that are injected directly into a vein (main lining) include heroin, cocaine and morphine. Injecting drugs has severe risks of local infections, bacterial endocarditis, increased incidences of HIV and Hepatitis B and C. Permanent liver and kidney disease are possible outcomes of drug use. Scars or "track marks" are formed by repeated injections. Veins harden internally from repeated use.

Mind or mood altering drugs work in certain "pleasure" pathways of the brain by enhancing or altering chemicals called neurotransmitters. There can be permanent change in these pathways with heavy and prolonged use of cocaine. Street drugs are "cut" with often unknown and dangerous substances, which can make the user very ill or even cause death.

Short-term health risks of illegal drug use are: decreased judgment and perception, decreased mental alertness, reduced motor skill often leading to motor vehicle accidents and bodily injuries, increased risk taking and aberrant behavior.

Narcotics, especially heroin and morphine decrease the rate of respiration which may result in respiratory arrest then death, if not medically treated.

Stimulants (cocaine, amphetamines, methamphetamines) produce exhilaration. There is a surge of adrenaline resulting in an increase in blood pressure and pulse rate, causing blood vessels to constrict. These changes can cause strokes, paralysis, heart attacks and death. These events can occur with the first or any subsequent use. The myth is that sexual activity is increased with cocaine use. The fact is that sexual activity is decreased with increased use of cocaine.

Hallucinogens produce and increase in sensor perception (visual and or auditory). There may be flashbacks from prior use of LSD and STP. Use of these drugs can result in short and long-term psychotic events. Deaths and serious injuries often happen to those under the influence of certain hallucinogens (LSD, STP and PCP). Drinking alcohol with substances, produces and additive effects, making the alcohol and drugs more potent.

Certain tranquilizers, especially in high doses cause disturbances in cardiac conduction. Vomiting is always a threat in drug use. It can cause choking and ultimately death, because the person's reflexes are diminished. "Roofies" and Liquid Ecstasy produce sedation and loss of memory. When put into drinks, an unknowing victim becomes sedated and could be raped with no memory of the event.

Use of drugs during pregnancy has effects on the baby. Women who use cocaine and heroin during pregnancy have an increase in miscarriages. They give birth to babies addicted and usually of low birth weight. The infant must go through a difficult withdrawal. Long term effects in these children are not yet known.

Addiction is a major risk of using illegal and controlled prescription drugs. Heroin, codeine, opiates, barbiturates, and morphine are strongly physically addicting. Cocaine procedures both physical and psychological addition. Withdrawal from narcotics, barbiturates and cocaine is difficult and painful. Drug users often return to using drugs. Over time, the drug user usually suffers from malnutrition and a lowered immune system. They often become seriously ill requiring hospitalization from multiple organ failure, overwhelming infections, psychotic events, injuries from accidents, or drug-related violence.

All students/employees at the University of Massachusetts Lowell are expected to abide by all federal, state and local laws, including those regulating the use, possession, sale, distribution, manufacture and cultivation of illicit or illegal drugs.

In addition, Congress amended Title XII of the Higher Education Act of 1965 by adding a section pertaining to Drug Free Schools and Campuses. Under this and other newer amendments any institution receiving federal funds, including federal student loan programs, must adopt and implement policies to prevent the use of illegal drugs and alcohol by students and employees.

Therefore, it is the University's responsibility to ensure that every student/employee is aware of the following information:

## Sanctions

Drug Policy Violation Minimum Sanctions:

| Violation | Sanctions |
| --- | --- |
| First use / possession / presence/ paraphernalia | Written reprimand<br>$75 fine*<br>AOD education<br>Parental notification for students under 21 |
| Second use / possession / presence / paraphernalia | Consideration of removal from housing<br>Probation for a minimum of one academic year<br>$100 fine*<br>AOD education<br>Parental notification of students under 21 |
| Subsequent use / possession/ presence / paraphernalia | Consideration of status sanction up to university suspension for one academic year<br>$100 fine*<br>AOD education<br>Parental notification for students under 21 |
| Possession of an ounce or less of marijuana | In accordance with Massachusetts State Law, all students found in possession of one ounce or less of marijuana, who are not determined to have the intent to distribute, will be subject to a $100 fine.<br>Students who are 17 or under will be required to attend a substance education program as proscribed by the State Juvenile System. |
| Possession with intent to distribute/ supply | Consideration of status sanction up to university suspension for one academic year<br>$100 fine*<br>AOD education<br>Parental notification for students under 21 |
| Sale or distribution | Consideration of status sanction up to university suspension for one academic year<br>$100 fine*<br>AOD education<br>Parental notification for students under 21 |
| Manufacture/ cultivation | Consideration of status sanctions ranging from probation to suspension or expulsion<br>$100 fine*<br>AOD education<br>Parental notification for students under 21 |

*Fines collected as sanctions are utilized for Wellness/Substance Education.

## Alcohol and Other Drug Education Program

The following options exist for Alcohol and Drug Offenses, and are used progressively, beginning with the program that is deemed to best meet the needs of the student, as determined by the Conduct Officer:

1. An on-line program taken by the student that provides both education and a personalized assessment and feedback.
2. A group-based workshop, designed to provide education and personalized feedback, taught by a Health Educator.
3. An individual assessment meeting with either a UMASS Lowell staff counselor or an Addiction Specialist; this determination will be made by the Conduct Officer or the Associate Dean of Student Affairs or their designee.
4. The requirement that a student seek alcohol or drug assessment by an off-campus provider, and follow the recommendations by that specialist, in order to continue in their academic coursework.
5. Another variation of the AOD Education Program, the program assigned to students who are 17 or under and have been found in possession of an ounce or less of marijuana. This program is administered through the Judiciary of the State of Massachusetts.

## Federal, State and Local Sanctions

For unlawful use, possession, distribution, sale manufacture and cultivation of illicit drug. For specific sanctions please contact the authorities.

**Referrals/Resources for Drug-Related Problems**

Services and resources are available to all members of the University community, to provide accurate information relating to drugs and alcohol, to support individual needs and to assist at crisis points. Listings of resources on campus are available by calling the Counseling Center (978-934-4331), Student Health Services (978-934-4991) and the Human Resources Office (978-934-3555).

## Definitions

The following definitions apply to the Drug and Alcohol Policies for the University of Massachusetts Lowell community, including students and guests:

- **University:** Area under jurisdiction of the University-includes all (1) property occupied, leased or used by the University; (2) property owned, occupied, leased or used by the University of Massachusetts Lowell; and (3) property occupied or used by any other university-recognized organization and all campuses and all leased space or space occupied with a user permit or license for the conduct of University business.
- **Controlled Substance**: any substance in schedules I. through V. of section 202 of the Controlled Substances Act (21 U.S.C. 812);
- **Conviction:** a finding of responsible (including a plea of no lo contender) or imposition of sentence, or both, by any discipline body charged with the responsibility to determine violations of the Federal or State criminal drug statutes.
- **Employee:** elected or appointed officers or employees, including all members of the University faculty and staff whether serving full or part-time, temporary or permanent, compensated or uncompensated.
- **Manufacture:** the production, preparation, propagation, compounding, conversion or processing of a controlled substance.
- **Possession:** the knowing or intentional possession of a controlled substance; having direct physical control over a controlled substance.
- **Student:** all persons taking courses at the University, either full-time or part-time; pursuing undergraduate, graduate, or professional studies; persons who withdraw after allegedly violating the Student Conduct Code; persons who are not officially enrolled for a particular term but who have a continuing relationship with the University; persons who have been notified of their acceptance for admission; or persons who are living in University residence halls or apartments, although not enrolled in this institution.

# Guidelines for Responses to Demonstrations on University Property

The University of Massachusetts recognizes the rights of members of the University community to freedom of assembly and speech, and strongly believes in fostering discourse and the free exchange of ideas at the University. However, as a matter of law and University policy, these rights and interests are restricted, and must be exercised on University property in a manner consistent with the mission and operation of the University and the rights of other members of the University community. Accordingly, the University long ago adopted policies and procedures at each of its campuses which take into account these countervailing interests.

Nonetheless, some members of the University community on occasion have exceeded the bounds of appropriate expression during the course of demonstrations, by interfering in the educational activities and business of the University and with the rights of others. It is therefore desirable to re-affirm the importance of appropriate time, place and manner restrictions on demonstrations. Accordingly, and in order to provide further consistency in the application of the University policies to on-campus protests, the Office of the President is issuing the following guidelines for responding to demonstrations on University property

- All campuses shall routinely and consistently apply the provisions of their respective codes of conduct and other relevant policies and procedures to on-campus demonstrations.
- The campuses shall take steps through appropriate procedures to hold demonstrators accountable for actions which violate University policies and regulations. Such improper actions include but are not limited to:
  - Material disruption of or interference with instructional activities, other University business and campus events;
  - Actual or threats of physical violence, or other forms of harassment, or destruction of University, other public or private property- Interference with free entry to or exit from University facilities and free movement by individuals; and
  - Interference with the rights of other members of the University community to freedom of speech and assembly, and other rights.
- Demonstrations are limited to appropriate public forums, which do not include, among other locations, faculty and administrative offices, classrooms and other instructional facilities. (Public forums are locations which by tradition or policy are available for public assembly and speech – such as a student union lobby where students have traditionally gathered to debate issues.) to the extent that a public forum exists within a University building, any demonstrations within that forum shall take place only during the building's normal operating hours.
- Where appropriate, the University shall endeavor to maintain open lines of communication with demonstrators and to provide opportunities for discussion of matters in dispute so long as the demonstrators act consistent with University policy and the rights of others. However, as a general rule, the University shall not negotiate with individuals who occupy any University facility, or with associated demonstrators, while any such occupation continues, and shall never negotiate within an occupied facility.

These guidelines are intended to support, not supplant, existing University policy. They apply to all members of the University community, including undergraduates, graduate students and employees as well as to guests and visitors. The guidelines should be implemented as consistently as possible, recognizing that special circumstances may on rare occasion require limited and judicious deviation from the guidelines. Further information on demonstrations can be found on the Policy Portal page.

# UMass Lowell Good Samaritan Policy

## Policy Statement

Student health and safety are primary concerns of the University of Massachusetts Lowell community.  Students may be reluctant to seek help in alcohol and drug-related emergencies because of potential conduct consequences for themselves, the person in need of assistance, or the

organization hosting the event where the situation occurs. Since these emergencies are potentially life threatening, UMass Lowell seeks to reduce barriers to seeking assistance. To this end, this Good Samaritan Policy has been developed.

## Purpose

The Good Samaritan Policy represents the University's commitment to increasing the likelihood that community members will call for medical assistance when faced with an alcohol or drug-related emergency. The policy also promotes education for individuals who receive emergency medical attention related to their own use of alcohol or drugs in order to reduce the likelihood of future occurrences.

## Definitions

Signs of serious intoxication/impairment include:

- Inability to rouse the person with loud shouting or vigorous shaking
- Passed out
- Semi-conscious; person goes in/out of consciousness
- Slow (< 8 breaths/minute) or irregular breathing or lapses in breathing of 10 seconds or more
- Cold, clammy, or bluish skin
- Vomiting while passed out, not waking up after vomiting, or incoherent while vomiting

## Procedures

Students are expected to contact the University Police (978-934-4911 or 4-4911) when they believe that assistance for an intoxicated/impaired person is needed on campus.  Students should seek immediate help if any of the above signs are present, as they indicate a potentially life-threatening emergency.  UMLPD will assist intoxicated/impaired individuals by facilitating transport to medical facilities or by taking other protective measures.  In case of an off-campus medical emergency, students should call 911 for assistance by local police or medical professionals.  If the intoxicated/impaired individual is located within a residence hall, a Resident Assistant (RA), , Resident Director (RD), and/or Area Coordinator (AC) should also be notified after UMLPD is called. A severely intoxicated/impaired individual should never be left alone; therefore, at least one person should stay with the intoxicated/impaired individual while another person notifies the RA//RD/AC.

Whenever a student assists an intoxicated /impaired person in procuring the assistance of UMLPD, local or state police, residence life staff, or medical professionals, neither the intoxicated individual nor the individual who assists will be subject to formal university disciplinary actions for (1) being intoxicated or (2) having provided that person alcohol. (This protocol does not preclude disciplinary action regarding other violations of university standards, such as causing or threatening physical harm, sexual assault, damage to property, harassment, hazing, etc.  Students should also be aware that this policy does not prevent action by local and state authorities.)  UMLPD and/or Residence Life staff will record names of intoxicated students to enable any follow-up that may be deemed necessary to ensure students well-being. Other information may also be as needed.

In order for this policy to apply, the intoxicated student(s) must agree to timely completion of recommended alcohol or drug education activities, assessment, and/or treatment depending on the level of concern for student health and safety. In addition, if the student is under 21 years of age their parents will be notified. If the student does not follow these stipulations, they have violated the Good Samaritan Policy and are subject to the complete range of sanctions and penalties as outlined in the Student Conduct Code for an alcohol or drug violation.

The Good Samaritan Policy may be used more than once. Students and organizations that help others seek medical assistance are not limited to one use of the Good Samaritan Policy, as they should always feel empowered to help those in need. However, serious or repeated incidents will prompt a higher degree of medical concern and formal response from the University which may include an intervention and/or conduct action. Questions regarding the UMass Lowell Good Samaritan policy should be directed to the Dean of Students Office.